Barbara HARRIS, Appellant

v.

TOYS "R" US–PENN, INC. a/k/a Toys "R" Us a/k/a Toys "R" Us, Inc., Appellee.

Superior Court of Pennsylvania.

Argued April 26, 2005.

Filed Aug. 3, 2005.

Gerald B. Baldino, Jr., Media, for appellant.

Francis S. Blatcher, Media, for appellee.

Before: LALLY–GREEN, GANTMAN, and PANELLA, JJ.

LALLY–GREEN, J.:

¶ 1 Appellant, Barbara Harris, appeals from the judgment entered on August 27, 2004. We affirm.

¶ 2 The trial court stated the factual and procedural history as follows:

The Plaintiff, Barbara Harris, has appealed from the Order denying her Post–Trial Motion in this premises liability negligence action. Plaintiff's sole issue contended in her Post–Trial Motion and again in this appeal was that this Court abused its discretion and committed an error of law in granting the Defendant's pre-trial Motion *in Limine* to Preclude [an] Alleged Hearsay Statement of Unidentified Employee (hereinafter Motion *in Limine*).

Plaintiff contended that, on August 19, 1999, at Defendant's store situated in Media, Delaware County, Pennsylvania, she suffered a head injury when struck by a child's motorized ride-on vehicle when it allegedly fell from the second of three shelves above a floor-level carpeted base deck as she was traversing aisle 10B of Defendant's premises. Plaintiff, whose height was stipulated to be five feet two inches, or 62 inches, testified that she was walking down the center of aisle 10B, which was sixty-nine inches in width, when she was struck by a toy that, including batteries, weighed approximately ten pounds and fell from a height of sixteen to twenty-two inches above her head. Plaintiff's daughter, Tiffany Harris, who had accompanied her mother to the store, testified that, while walking in the next aisle, she heard a loud noise and her mother cry out, and ran to discover her in a "sit-up" position on the floor and holding her head from which her glasses had fallen. Tiffany said she had seen a large ride-on toy on the floor across from her mother and that she thought this was the one that hit the Plaintiff. Upon instruction from her mother, Tiffany went to a nearby desk behind which an employee was standing whom she asked to get some water for her mother. Tiffany also indicated that she had filled out an incident report which her mother signed

and which described the incident in terms of having occurred when a toy fell off the third shelf and hit the Plaintiff in the head. Tiffany Harris then testified that she observed that the "lip" on the third shelf above where her mother was sitting was "bent and broken." However, Ms. Harris never elaborated upon the shelf guard's alleged defective condition, and said nothing about its condition nor, indeed, about any condition surrounding the shelving at all in the incident report.

The Plaintiff testified that she had no idea where the object that hit her had come from. In contrast to her daughter's testimony of finding her sitting alone on the floor, Plaintiff related that "they had put me on the shelf," and the large motorized toy was sitting on the shelf next to her, and that she did not remember anything about being on the floor. Plaintiff further indicated that what hit her "felt" like a "big big Jeep," and because the larger toys were all she had seen after the incident, she assumed that she had been hit by one of those vehicles, instead of the smaller vehicle later acknowledged to be the toy in question. Plaintiff admitted that she had responded to discovery requests with a claim that she did not remember the color, size or shape of the toy vehicle, and that because she had been dazed and her glasses were broken, she didn't really see it. Plaintiff then said that the large toy she had seen on the aisle had been placed there by an individual who had made room for her to sit on the shelf, and that she had presumed the one that hit her had been taken away because she "never saw it." . . .

. . .Plaintiff presented a plethora of medical, psychological and vocational trial experts, all of whom claimed that results from the administration of multiple batteries of subjective test results adduced that Plaintiff had incurred brain damage from this incident as well as injuries to her neck and back. Plaintiff submitted additional expert testimony that these injuries entitled her to lifelong supportive health care services that would cost in excess of several million dollars. Defendant's experts were of the opinion that there was no objective showing of the alleged brain damage and that the symptoms complained of were caused instead by long term untreated mental depression instead. It cannot be overemphasized that this case presented the anomalous circumstance that Plaintiff's counsel repeatedly represented her credibility to be questionable due to the contended brain damage, despite the fact that Plaintiff, and Plaintiff alone, was the only witness who could attest to what had happened to her in aisle 10B of the Media, Pennsylvania branch of Toys R Us on the day in question.

Following instruction on the principles of negligence attendant to a premises liability action and applicable to a business invitee, the jury found the Defendant not to have been negligent in meeting its obligations to the Plaintiff and never reached the questions of causation and damages. Plaintiff filed a Post–Trial Motion seeking relief in the form of a new trial on the sole ground that the Court erred or abused its discretion in granting Defendant's pre-trial Motion *in Limine* to preclude hearsay statements made by an unnamed, unknown and, as yet, unidentified declarant purported to be an agent or employee of the Defendant. Plaintiff contended that the alleged declarant approached her shortly after the object struck her and in the presence of her daughter, Tiffany Harris, "apologized, stating that he had just placed the unit in question back on the shelf after showing it to a customer and

had not placed it back on the shelf correctly." Plaintiff alleged that this statement was admissible into evidence as an exception to the rule prohibiting hearsay testimony because it qualified as, (1) an admission by a party opponent, (2) an excited utterance, and (3) a present sense impression... Plaintiff's Post–Trial Motion was denied and this timely appeal followed.

Trial Court Opinion, 12/20/04, at 1–3, 8–9 (citations omitted).[1]

¶ 3 Appellant raises one issue on appeal: Whether the Trial Court erred when it precluded evidence of a statement made by an employee of Toys "R" Us wherein he apologized to Mrs. Harris and stated that he had incorrectly placed the item that struck her back on a shelf after showing it to a customer. This statement fell within the exceptions to the hearsay rule for (1) admissions by a party-opponent, (2) excited utterances, and/or (3) present sense impressions.

Appellant's Brief at 5.

 ¶ 4 We review a trial court's decision regarding the admission of evidence under the following standard:

It is well established in this Commonwealth that the decision to admit or to exclude evidence, including expert testimony, lies within the sound discretion of the trial court. Moreover, our standard of review is very narrow; we may only reverse upon a showing that the trial court clearly abused its discretion or committed an error of law. To constitute reversible error, an evidentiary rul-

ing must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Campbell v. Attanasio*, 862 A.2d 1282, 1288–1289 (Pa.Super.2004) (citations and quotation marks omitted).

¶ 5 The Pennsylvania Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). The rules further provide that "[h]earsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. The statement at issue is undeniably hearsay, as it was made out of court and was offered by Appellant to prove the truth of the matter asserted, *i.e.*, that the negligence of a Toys "R" Us employee was the cause of Appellant's injuries. It is therefore inadmissible unless an exception to the hearsay rule applies. Pa.R.E. 802.

¶ 6 Pursuant to Pa.R.E. 803, several exceptions to the hearsay rule exist that allow for the admission of certain categories of hearsay evidence. The three exceptions asserted by Appellant are: (1) admissions by a party-opponent, (2) excited utterances, and/or (3) present sense impressions. Rule 803 provides for these exceptions as follows:

**Rule 803. Hearsay exceptions; availability of declarant immaterial**

The following statements, as hereinafter defined, are not excluded by the

---

**1.** Appellant filed a Notice of Appeal to Superior Court on August 18, 2004. The trial court ordered Appellant to file a Concise Statement of Matters Complained of on Appeal on August 23, 2004. Appellant filed a timely Concise Statement on August 26, 2004. Praecipe for Entry of Judgment was filed on August 27, 2004, and Judgment was entered the same day. Appellant, thus, incorrectly filed her ap-

peal before judgment was entered. We have recently held that, in the interests of judicial economy, we will not quash such appeals where judgment was entered prior to appellate disposition. *Raheem v. University of the Arts*, 2005 PA Super 134, ¶ 8, 872 A.2d 1232, citing, *Somerset Community Hospital v. Allan B. Mitchell & Assoc.*, 454 Pa.Super. 188, 685 A.2d 141, 144 (1996).

hearsay rule, even though the declarant is available as a witness:

(1) Present Sense Impression.

(2) Excited Utterance.

. . .

(25) Admission by Party–Opponent. Pa.R.E. 803. We will address the three asserted exceptions separately.

▮ ¶ 7 Appellant first claims that the trial court erred in determining that the alleged statement does not qualify as an exception to the hearsay rule because it constitutes an admission by a party-opponent. Rule 803(25) creates an exception to the hearsay rule for admissions by party-opponents and states, in pertinent part:

**(25) Admission by Party–Opponent**

The statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity, or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, **or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship,** or (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy . . . . .

Pa.R.E. 803(25) (emphasis added).

▮ ¶ 8 Appellant argues that Rule 803(25)(D) is the section relevant to this case. For an admission of a party opponent to be admissible under Rule 803(25)(D), the proponent of the statement

must establish three elements: (1) the declarant was an agent or employee of a party opponent; (2) the declarant made the statement while employed by the party opponent; and (3) the statement concerned a matter within the scope of agency or employment. *Sehl v. Vista Linen Rental Serv. Inc.*, 763 A.2d 858, 862 (Pa.Super.2000).

¶ 9 In support of admitting the statement, Appellant introduced deposition testimony from the Appellant herself and her daughter, Tiffany.[2] Appellant identified the declarant as follows:

Q: Describe for me what happened to you physically after this car struck you on the left side of your head.

A: After the car struck me, all I can basically remember was like I could see—I heard the salesman apologizing and he said, "Miss, I'm very sorry. I just took the car off the shelf to show a customer and I didn't put it up there right. I'm sorry."

Q: Okay. What was the name of that employee?

A: I don't know. I thought that it might have been on one of those reports. But I didn't see it on there.

Q: Was he wearing a name tag?

A: I don't have a clue. All I could see, I remember a lady handing me my glasses, and all I could see was an image of a white face and white hands in front of me. Really, it was kind of—I couldn't see it. I was out of it.

* * * *

---

**2.** We note that Appellant has failed to include these depositions in the certified record. Appellant is responsible for transmitting a complete record to the Superior Court, and failure to do so may result in waiver. *Bennyhoff v. Pappert*, 790 A.2d 313 (Pa.Super.2001).

However, the certified record includes the pages of deposition testimony submitted with Plaintiff's and Defendant's Motions *in Limine*. Neither party nor the trial court referred to any statements not of record, so we address this issue on the merits.

Q: Let's talk about the statements that you have referred to that occurred after the accident. Tell me specifically what the person who you believe was a Toys "R" Us employee said to you.

A: He—he ran over and he said, "Miss, I'm sorry. But I just put that car back. I had taken it down to show a customer, and I just put it back."

Q: Did he say anything else to you at that time?

A: I can't recall.

Q: Did he say anything else to you at any other time that day in the store?

A: No.

Q: Did you ever talk to that individual again?

A: No.

Q: You've provided some information regarding that person's description.

A: Um-hum.

Q: Is that a yes?

A: Yes.

Q: Do you know how much that person weighed, approximately?

A: You've got to be kidding.

Q: Was he thin, medium build, large build?

A: On the thin side.

Q: Was he tall or shorter than six feet?

A: Shorter.

Q: How tall are you?

A: Five-two.

Q: We've got him nailed somewhere between five-two and six feet. Can you do better than that?

A: Maybe five-seven. I don't have a clue. I mean, he didn't appear to be real tall to me. But I can't say for sure.

Deposition of Barbara Harris, 2/14/02, at 58–59, 64–66.

¶ 10 Tiffany Harris testified as follows:

Q: Okay. Tell me what you did. We're at the point now where you came around the corner, and you see your mom. What did you do?

A: Asked her was she all right, and I went to like—it was like a service desk or whatever, like customer service or whatever you want to call it, like at the end of the aisle or whatever, and the guy came out or whatever, and he was like, oh, I'm so sorry, ma'am, he was like, I just put that back up there.

Q: Okay. And what did this man look like?

A: I can't remember exactly what he— exactly what he looks like.

Q: How tall are you?

A: 5'4".

Q: Was he taller or shorter than you?

A: I'm not sure.

Q: Can you estimate his weight for me?

A: I can't remember.

Q: Okay. Was he Caucasian, [B]lack, Hispanic?

A: He was Caucasian.

Q: How about his approximate age?

A: Young, maybe 19 or 20, something like that. He looked young.

Q: What color was his hair?

A: I don't remember.

Q: Do you know if he was a customer or an employee?

A: He was an employee.

Q: How do you know that?

A: Because he had on a shirt.

Q: What did it say?

A: Toys "R" Us.

Q: What color was it?

A: If I can remember, I think it was royal blue, but I'm not sure.

Q: Royal blue?

A: Royal blue I think it was.

Q: Did he have a name tag on?

A: I'm not sure. I can't remember.

Q: All right. So how long were you with your mom before you talked to this employee?

A: Maybe like two seconds. I like ran down there because you could just see her like holding her head, and I just—you know, she told me to get somebody, so that's what I did. It was like right at the end of the aisle.

Q: So then you brought the employee back to where your mom was?

A: Yes.

Q: And then what was done at that point?

A: I'm assuming that, if I can remember, I think he had already seen it, I think he had already seen her, but I'm not sure, and like after that or whatever, he asked her, did she want some water or something like that, and I think she said yes or no, I cannot remember. But whoever—the manager didn't come out, but someone else had me like write a report, another employee had me, you know, just ask her what happened, and I wrote the report based on, you know, what she was able to tell me at that time.

Q: Okay.

A: And a couple other customers came over and basically said that they had seen him just put it up there.

Deposition of Tiffany Harris, 2/15/02, at 12–14.

¶ 11 Appellant contends that this testimony clearly establishes that the declarant was an on-duty employee of Toys "R" Us.

Appellant's Brief at 12–13. However, the statements of Appellant and her daughter are anything but clear. Appellant stated that she had just been struck in the head and was not wearing her glasses at the time the statement was made. Deposition of Barbara Harris, 2/14/02, at 59. Beyond an approximate height and a characterization of the speaker as thin, Appellant provided no information about the declarant. *Id.* at 66.

¶ 12 Tiffany Harris testified that, at her mother's request, she went to a service desk and brought a Toys "R" Us employee to the scene of the accident to help. Deposition of Tiffany Harris, 2/15/02, at 13. She then stated that this was the person who made the hearsay statement at issue. *Id.* But Ms. Harris also said that this man had already seen her mother. *Id.* at 15. If this narrative concerns one man, it is self-contradictory. If it involves two individuals, it leaves open the question of which one made the statement. At the same time, "a couple" other customers said they had seen "him" put the truck back on the shelf. *Id.* A different Toys "R" Us employee then had Ms. Harris fill out an incident report. *Id.* at 17. Ms. Harris was unable to say if this person was male or female. *Id.*

¶ 13 The proponent of an admission by a party-opponent under Rule 803(25)(D) must establish that the declarant was an employee of the principal at the time the statement was made, and the statement concerned a matter within the scope of employment. *Sehl,* 763 A.2d at 862. Given the incomplete and confusing nature of the testimony offered by the Appellant, we cannot agree that it was an abuse of discretion or error of law to exclude the evidence.

¶ 14 Appellant also alleges that the trial court erred by considering the credibility

of the proffered testimony as part of its decision to exclude the evidence. Appellant's Brief at 13–14. Appellant cites *Odato v. Fullen,* 848 A.2d 964 (Pa.Super.2004), for the proposition that credibility determinations are the province of the jury. *Id.* at 14. *Odato,* however, is irrelevant to the case at bar. In *Odato,* the issue was the jury's decision that an automobile accident was not the cause of the plaintiff's injuries. *Odato,* 848 A.2d at 966–967. The instant case is distinguishable, as it involves the actions of a trial judge considering a pre-trial motion *in limine.*

¶ 15 It is the responsibility of the judge, not the jury, to "resolve preliminary factual questions which form a basis for the legal admissibility of evidence." *Commonwealth v. Chester,* 526 Pa. 578, 587 A.2d 1367, 1376 (1991); Pa.R.E. 104. These preliminary questions include whether evidence qualifies under an exception to the hearsay rule. *Id.* In considering the admissibility of evidence, a trial court may properly consider credibility. *Concorde Investments, Inc. v. Gallagher,* 345 Pa.Super. 49, 497 A.2d 637, 641–642 (1985). Appellant, as proponent of the statement, bears the burden of proof and must convince the court that the hearsay statement is admissible as an admission of a party opponent. *Sehl,* 763 A.2d at 862.

¶ 16 In the instant case, the trial court did not accept Appellant's argument in favor of the admissibility of the statement, in part because of doubts as to the credibility of the testimony offered by Appellant. Trial Court Opinion, 12/20/04, at 14–18. This decision was a proper exercise of the gatekeeping function of the judge. Pa. R.E. 104; *Chester.* Without this safeguard, parties could present to the jury any statements that they assert are admissions by their opponents, effectively gutting the hearsay rule. Appellant's first asserted exception to the hearsay rule fails.

¶ 17 Second, Appellant claims that the trial court erred in determining that the alleged statement does not qualify as an exception to the hearsay rule because it is an excited utterance. Rule 803(2) creates an exception to the hearsay rule for excited utterances, and states:

**(2) Excited Utterance.**

A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

Pa.R.E. 803(2). An excited utterance is a spontaneous declaration: (1) by a person whose mind is affected by overpowering emotion caused by some unexpected occurrence; (2) which that person had just participated in or closely witnessed; and (3) is made so near the occurrence both in time and place as to exclude the likelihood of it being a product in whole or in part of his reflective faculties. *Commonwealth v. Carmody,* 799 A.2d 143, 147 (Pa.Super.2002).

¶ 18 Regarding the first requirement for an excited utterance, Appellant argues that an employee who arrives after an accident occurs and sees a woman on the floor who has apparently been hit on the head by a toy truck he had just negligently placed on a shelf would be "at the very least 'startled', and perhaps even panicked." Appellant's Brief at 17. While this may be true, it does not change the fact that the proffered testimony would in no way establish any emotion on the part of the declarant. Our review of the record reflects that the testimony of Appellant and her daughter does not indicate that the declarant showed or expressed any emotion at all, let alone an overpowering emotion. Accordingly, there are no grounds for considering this statement an excited utterance. *Carmody.*

¶ 19 Regarding the second requirement for an excited utterance, Appellant states that it was error for the trial court to hold that the declarant must have witnessed the accident for his statement to be admissible.[3] Appellant's Brief at 17. Appellant is in error. The Courts of this Commonwealth have consistently ruled that an excited utterance requires the declarant to have "participated in or closely witnessed" the event they are commenting on. *Carmody. See also, Commonwealth v. Sanford,* 397 Pa.Super. 581, 580 A.2d 784, 788 (1990); *Commonwealth v. Stallworth,* 566 Pa. 349, 781 A.2d 110, 119–120 (2001). Our review of the record reflects that the testimony of Appellant and her daughter fails to establish that the declarant participated in, or closely witnessed, Appellant's accident.

¶ 20 In conclusion, as Appellant failed to satisfy the first two elements of the test laid out in *Carmody,* the trial court was within its discretion to exclude the statement, as Appellant failed to show it was an excited utterance.[4]

¶ 21 Appellant's third claim is that the trial court erred in determining that the alleged statement did not qualify as an exception to the hearsay rule because it constitutes a present sense impression. Rule 803(1) creates an exception to the hearsay rule for present sense impressions, and states:

**(1) Present Sense Impression.**

A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

Pa.R.E. 803(1). This exception allows testimony concerning events observed by the declarant regardless of whether or not the declarant was excited. *Commonwealth v. Gray,* 867 A.2d 560, 571 (Pa.Super.2005). The statement must be made at the time of the event or so shortly thereafter that the declarant would be unlikely to have the opportunity to decide to make a false statement. *Id.*

¶ 22 We have repeatedly held that failure to develop an argument with citation to, and analysis of, relevant authority waives that issue on review. Pa.R.A.P. 2119(b); *Eichman v. McKeon,* 824 A.2d 305, 319 (Pa.Super.2003). Our review of Appellant's brief reveals that there is no analysis of this issue with citation to appropriate authority. *See,* Appellant's Brief at 18–19. Accordingly, Appellant has waived her argument with respect to present sense impression.[5]

¶ 23 For the foregoing reasons, we find no abuse of discretion or error of law in the trial court's decision to exclude the hearsay statement.

¶ 24 Judgment affirmed.

---

3. We note Appellant cites no case law in support of this assertion.

4. The trial court focused solely on the issue of whether the declarant witnessed or participated in the event, and did not address the declarant's level of emotion. Trial Court Opinion, 12/20/04, at 21–23.

5. We further note that Appellant has violated Pa.R.A.P. 2117(b), which requires that all argument be excluded from the Statement of the Case. Appellant is cautioned that the Statement of the Case must be "a balanced presentation of the history of the proceedings and the respective contentions of the parties." Pa.R.A.P. 2117(b).