J.A13039/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CCI COMMUNICATIONS, INC., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| THE RICHARD F. SASSA INSURANCE | : | |
| AGENCY INC., | : | |
| | : | No. 2569 EDA 2013 |
| Appellee | : | |

Appeal from the Order July 18, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division No(s).: February Term, 2010 No. 2070

BEFORE: ALLEN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                **FILED OCTOBER 22, 2014**

Appellant, CCI Communications, Inc., appeals from the order of the Philadelphia County Court of Common Pleas granting summary judgment in favor of Appellee, The Richard F. Sassa Insurance Agency, Inc.  Another panel of this Court previously reversed summary judgment in favor of Appellee and remanded for further discovery.  ***CCI Commc'ns, Inc. v. The Richard F. Sassa Ins. Agency, Inc.***, 3253 EDA 2011 (unpublished memorandum) (Pa. Super. Nov. 20, 2012).  Appellant contends the trial court erred in finding that the statute of limitations barred its claim for

---

[*] Former Justice specially assigned to the Superior Court.

negligence against Appellee. Appellant argues the discovery rule tolled the statute of limitations on Appellant's claim against Appellee. We affirm.

This Court, in the prior appeal, adopting the summary of the facts as provided by Appellant, stated:

> [Appellant] is a video production company that provides TV production services such as studio production, on-site mobile production using trucks, and video editing utilizing audio/visual equipment. The programming includes the Phillies Pre-Game Show. The video equipment was initially installed in a truck and the truck was insured for $300,000 under [an automobile policy with the Employer's Fire Insurance Company ("EMPLOYERS").]
>
> A fire occurred at [Appellant's] Building II on August 23, 2007 ("date of loss") destroying the building and business personal property located therein including certain video equipment that formerly had been installed in the truck. In addition [Appellant] sustained a business income loss from destruction of the building and business personal property. EMPLOYERS paid [Appellant] for destruction to the building and partially paid for the business personal property. EMPLOYERS also paid the business loss income resulting from the destruction of Building II but partially paid for the destruction of the video equipment but paid nothing for the business income loss resulting from the destruction of the video equipment. [Appellant] sued EMPLOYERS for unpaid portion of the video equipment loss and also for the business income loss resulting from the destruction of the video equipment.
>
> Kenneth Selinger [("Selinger")], President of Appellant testified at his deposition that he [had] asked John Geraldi [("Geraldi")], President of [Appellee] to procure business income loss coverage on [Appellant's] video equipment. [Selinger] communicated to [Geraldi] the purpose of the $300,000 in Schedule 8 of the Auto policy was to insure any loss arising out of damage to the video equipment in the truck including loss of income.

At the time of the fire, the video equipment was not in the truck but stored in [Appellant's] Building II. As a result, EMPLOYERS attempted to calculate [Appellant's] losses under Building II's property and business income coverages rather than the Auto Policy that contained the $300,000 limit of insurance. Building II and another provision of the insurance policy did not have enough coverage to cover the video equipment damage fully and [Appellant's] business income loss to the video equipment. The rest of the policy did not have any business income coverage that would be applicable as result of which **[Appellant] was not paid for the business income loss to the video equipment by EMPLOYERS and only partially paid for the damage to the video equipment.**

**Initially [Appellant's] suit was to reform EMPLOYERS' policy to provide [that] the video equipment and business income loss was covered under the $300,000 in the auto policy. However, [Appellant] had to settle its reformation claim against EMPLOYERS for partial payment on the video equipment loss only and nothing on the business income loss arising from the damage to the video equipment. This was because the averments in [Appellant's] complaint turned out to be incorrect.** [Appellant] had averred in its complaint that:

16. [Appellant] communicated to [Appellant's] broker, [Geraldi] of [Appellee], **the purpose of the $300,0-00 in Schedule 8 was to insure any loss arising out of damage to the equipment in the truck including loss of income.**

17. Upon belief, [Appellee] communicated the purpose of the $300,000 coverage on the truck to [EMPLOYERS *via* a separate nonparty entity].

\* \* \*

**When [Appellant] settled its claims against EMPLOYERS that left only the sole liability claim in EMPLOYERS' joinder complaint against [Appellee]**

**outstanding.** [Appellee] filed a Motion for Summary Judgment against [Appellant] on the grounds that the two year statute of limitations[1] had run on [Appellant's] claim under the sole liability claim and [Appellant's] claim against [Appellee] was thus barred. The [trial] court entered an order granting [Appellee's] Motion for Summary Judgment on the statute of limitations defense.

Brief of Appellant, pp. 4-7 (emphasis omitted).

***CCI Commc'ns, Inc.*** 3253 EDA 2011 at 1-3 (emphases added). Appellant appealed from the order granting summary judgment in favor of Appellee. On November 20, 2012, this Court reversed and remanded for further proceedings. ***See id.*** at 7-8.

In remanding the case *sub judice* for further discovery, this Court reasoned:

. . . [Appellant] claims "there are no record facts upon which the [trial] court could have based its conclusion that the statute of limitations on [its] professional malpractice claim began to run on August 23, 2007." The basis of this argument is the following germane factual findings rendered by the trial court:

Here, [Appellant] knew that the insurance policy as issued did not contain the coverage they thought they had requested. [**Appellant's**] **first-party insurance claim became knowable on August 23, 2007, the date of the fire.** As to [Appellant,] the statute of limitations against [Appellee] for negligence in the issuance of the policy expired on August 23, 2009. Since [Appellee] was joined on August 27, 2010, [Appellant] had no claim for negligence [i.e. malpractice] against [Appellee]. Any direct claim is now barred as a matter of law.

---

[1] The statute of limitations for a negligence claim is two years. ***See*** 42 Pa.C.S. § 5524(7).

- 4 -

Trial [Ct. Op., 5/10/12, at 3] (emphasis supplied).  Having now reviewed the record, we are compelled to agree with [Appellant] that, granting it the benefit of all doubt as the nonmoving party, **it may, at the time of the fire, have had a good faith basis upon which to believe that it had purchased the appropriate insurance.**  Thus, the mere occurrence of an event for which insurance coverage is sought, was not evidence that claimant was aware that the sought after coverage was not in place.  While we are certainly mindful that the claimant's good faith basis would obviously be undercut by notice of the denial of coverage from the insurer, we do not find that critical information—specifically, the date of such notice of denial—apparent on this record.  Thus, we are compelled to agree with [Appellant] that the factual information necessary to evidence the triggering of the applicable statute of limitations against [Appellee] is not contained in the present record.  **Therefore, we must reverse the grant of summary judgment and remand this case for further proceeding**s.[ ]

*CCI Commc'ns Inc.*, 3253 EDA 2011 at 7-8 (some citations omitted and

some emphases added).[2]

---

[2] As the trial court stated:

It should be noted that the Superior Court implied that "the date of the denial of coverage decision by the Insurance Company" would be important; however, **there was no denial of coverage here**.  **Instead, [Appellant] argued that the loss had been adjusted improperly under the property portion of the policy, rather than under the auto portion of the policy whose proceeds had not been exhausted.** [Appellant's] Third Am. Compl. ¶ 9.  Neither party has addressed the Superior Court's concerns over a "denial date."  Because payment was made, but there was an alleged problem with the type of coverage, neither party appears to assert a "date of denial," as being critical.

On remand, additional discovery was taken. Selinger, Appellant's president, was re-deposed on March 4, 2013 and testified to the following. Selinger's son Steve, John Geraldi, Appellee's president, and the adjuster for One Beacon, Michael Hagan, assisted in adjusting the fire loss. N.T., 3/4/13, at 7. Martin Rabinowitz worked with the adjuster, received the policies and Appellant's losses, and made a recommendation. *Id.* at 8. Geraldi assisted in trying to determine what coverage existed for the loss. *Id.* **One of the components of the loss was the loss of income resulting from the fire**. *Id.* at 9.

Selinger further testified, *inter alia*, as follows:

> Q: Can you give me . . . a general time frame on when your meetings with [ ] Geraldi would have taken place?
>
> A: **They were frequent right after the fire**. He was there that day. [Geraldi] had the policy, we did not have the policy on site. . . .
>
> \* \* \*
>
> Q: You mentioned a little bit ago that you did not have the policy for that particular coverage period at the time the fire happened and that [Geraldi] had to provide that to you. Correct?
>
> A: Correct.
>
> Q: Would that be something he did at one of your very first meetings after the fire?
>
> [ ] **Went over what the coverages were**?

---

Trial Ct. Op., 7/18/13, at 5 n.17 (emphasis added).

A: **Yes**.

\*     \*     \*

**After the fire, it was the first time I saw the complete policy.  Because that is what [Hagan] from One Beacon wanted to go through so he could ascertain what coverages were there.**

\*     \*     \*

Q: And how quickly after the fire would you and [Geraldi] and [Hagan] have gotten together and looked over the policy?

A: **I think that was within the week as well.**  I think in that first meeting we were all together, I think the policy was also part of that meeting.

Q: Can you tell me the nature of what you discussed, and as I understand your testimony, shortly after the fire you met with [Geraldi] and you looked at a summary of coverages and talked about the process I assume, adjustment process.  Correct?

A: Correct.

Q: And at that point, was anything that you now know to be a business income claim relating to the downtime for the mobile unit discussed?  This is just the first meeting with [Geraldi] only.  And it may not have been discussed specifically, but was the concept discussed?

A: The concept was discussed, I believe, because the—that was one of our immediate concerns.

\*     \*     \*

Q: And the meeting with—we just talked about your initial meeting with [Geraldi].  Now, at your—I think you said there was another meeting with [Geraldi] and then [Hagan] as well probably still within a week or so of the fire. Correct?

A: Correct.

Q: And at that point, you had the policy . . . . Is that correct?

A: Correct. I mean, most of the discussions, [Geraldi] was really helping [Hagan], you know, understand some of the coverages and they were both searching, okay, is this covered and they would go through and they would look at it and so forth and so on.

Q: So that was at one of your first meetings with you, [Geraldi] and [Hagan], that **they were looking in the policy to see what coverages were there** and where things might fall. Correct?

A: Correct.

Q: Did any other meeting like that take place over the course of the adjusting, including [Geraldi, Hagan] and yourself, possibly your son, were reconvening to vet out coverages under the policy?

A: I don't know how many times is happened, but **it was at least six to eight meetings**[3] where we were all together. . . .

* * *

Q: Do you recall [ ] Geraldi specifically telling you that the assigned coverage limit for the truck specifically also provided for business income protection?

A: It's difficult to recall the specific—if you want to ask specifically, but it certainly through all those years was something that we definitely assumed was part of that.

Q: **After the fire, you testified that Mr. Geraldi participated in six to eight meetings with you, some of which—at some of which you went over the policy**

---

[3] These meetings occurred in 2007. N.T. at 30.

> **and discussed what you were eligible for and what you had to do.** Correct?
>
> A: **Correct.**
>
> Q: And at any point during those meetings, and I'll ask the same question for those meetings, did he represent to you specifically that a business income claim would be covered or should be covered under the auto portion of the policy?
>
> A: I don't know if he specifically mentioned under the auto part of the policy, but he certainly indicated that we would be covered for some of the interruption that we were experiencing.
>
> Q: I think it was your testimony previously that you expected business income or business interruption to be covered, but you just weren't sure how or under what portion of the policy it would be covered. Would that be fair to say?
>
> A: That would be fair to say. . . .
>
> Q:. . . [I]n your complaint . . . it seems to indicate that its [your] position that it should be covered under the auto portion of the policy and that is what is written in black and white. Correct?
>
> A: Correct.

N.T., 3/4/13, at 12, 14, 20, 21-22, 23-24, 60-62 (emphases added).

The trial court summarized the procedural posture of this case as follows:

> On May 19, 2010, [Appellant] filed its Third Amended Complaint against [EMPLOYERS] for breach of contract, reformation, and bad faith.[4] [Appellant's] complaint

---

[4] The docket entries in the case *sub judice* commence on February 17, 2010, with the filing of Appellant's Complaint against EMPLOYERS. **See** Docket,

arises out of a fire loss that occurred on its premises on August 23, 2007.

On August 27, 2010, [EMPLOYERS] filed a joinder complaint against additional defendant [Appellee] for a claim of negligence.

On October 15, 2010, [Appellee] filed its answer with new matter and cross-claim to [EMPLOYERS'] joinder complaint.

On October 12, 2011, [Appellee] filed a motion for summary judgment. At the time of filing, [Appellant] had settled all claims with [EMPLOYERS] . . . .

On October 31, 2011, [the court] granted [Appellee's] motion for summary judgment . . . . The court reasoned: "[Appellant's] first-party insurance claim became actionable on August 23, 2007, the date the fire occurred. Since no claim was asserted against [Appellee] until August 27, 2010, any direct claim is now barred as a matter of law."[5]

---

2/17/10, at 3. On March 11, 2010, Appellant filed its First Amended Complaint. *See id.* at 4. The Second Amended Complaint was filed on April 7, 2010. *See id.*

[5] The trial court had previously opined:

The party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence. [Appellant] knew of [Appellee's] involvement in procuring the policy at issue in this case, [Appellant] knew the coverage it asked [Appellee] to obtain, [Appellant] knew the contents of the policy, [Appellant] knew the reason for the denial of coverage, and [Appellant] was represented by counsel who could ascertain what the policy did or did not cover, within the statute of limitations. The discovery rule does not apply in this case.

Trial Ct. Op., 10/31/11, at 2 n.5.

On November 29, 2011, [Appellant] appealed from the October 31, 2011 Order to the Superior Court.

On January 15, 2013, the Superior Court reversed the order granting summary judgment in favor of [Appellee], and remanded the case.[6]

Trial Ct. Op., 7/18/13, at 1-2 (footnotes omitted and emphases added).

On April 11, 2013, Appellee filed the underlying motion for summary judgment, which the trial court granted on July 18, 2013. The trial court concluded, based upon Selinger's testimony, that Appellant failed to "meet its burden to demonstrate it could not, upon reasonable investigation, ascertain [this coverage was] not present in the policy." *Id.* at 7. Appellant filed a motion for reconsideration which was denied on August 5, 2013. This timely appeal followed. Appellant was not ordered to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Appellant raises the following issues for our review:

A. Under the discovery rule did the statute of limitations on [Appellant's] professional malpractice claim against [Appellee] for an unpaid business interruption loss not start to run until [Appellee] filed an answer to EMPLOYERS' joinder complaint that revealed that [Appellee] had never requested business interruption coverage for [Appellant] from EMPLOYERS?

---

[6] ***See CCI Commc'ns, Inc.*** 3253 EDA 2011. We note that this Court's memorandum was filed on November 20, 2012 and the record was remitted to the trial court on January 11, 2013. Our memorandum was then entered on the trial court's docket on January 15, 2013.

B. Did the lower court decide the wrong issue when it decided when did [Appellant] know [sic] it did not have business income coverage when the correct issue is when did [Appellant] know that [Appellee] had not requested business income coverage?

C. Did the lower court commit reversible error by not allowing [Appellant] to present evidence it told [Appellee] to procure business income coverage on its video equipment?

D. Did the lower court commit reversible error by not finding the six years statute of limitations for breach of contract was applicable?

Appellant's Brief at 5-6.

First, Appellant argues that the trial court erred in entering summary judgment in Appellee's favor.[7]  Appellant contends the discovery rule applies in the instant case as an exception to the requirement that suit must be brought within the statutory period.  *Id.* at 16.  We reproduce Appellant's argument verbatim:

> In this case, [Appellant] first discovered the possible existence of its professional malpractice claim against [Appellee] on **October 15, 2010** when [Appellee]

---

[7] Previously, this Court reversed the order granting summary judgment in favor of Appellee because there was insufficient "factual information necessary to evidence the triggering of the applicable statute of limitations" in the record.  *CCI Commc'ns, Inc.*, 3253 EDA 2011 at 7-8.  Appellant had argued the cause of action should be deemed timely filed because the discovery rule tolled the statute of limitations.  *Id.* at 5.  This Court found the issue waived because it was not raised in the trial court.  *Id.* at 6.  After remand, Appellee filed a motion for summary judgment averring the claim was time barred.  Appellee's Mot. Summ. J., 4/11/13.  Appellant's response to the motion raised the discovery issue.  *See* Appellant's Resp. Mot. Summ. J., 5/13/13, at 8.

revealed for the first time in its Answer to EMPLOYERS' Joinder Complaint that it had not communicated to EMPLOYERS a request for business income coverage on [Appellant's] video equipment. That means that under the Discovery Rule the statute of limitations on [Appellant's] professional malpractice claim against [Appellee] for payment of the unpaid business income claim did not begin to run until **October 15, 2010** and the statute of limitations would not have expired until **October 14, 2012. Since [Appellee] was joined on August 27, 2010**, such joinder was timely. The lower court committed reversible error in deciding the Discovery Rule began to run by the end of 2007, granting [Appellee's] Motion for Summary Judgment against [Appellee] and this Court should reverse and remand this case for trial.

*Id.* at 16-17.[8] We find no relief is due.

---

[8] We note that in Appellant's first appeal to this Court, Appellant asserted that the cause of action against Appellee was timely under the discovery rule. This Court opined:

[Appellant] first argues that its cause of action against [Appellee] should be considered as timely filed under the "discovery rule," and that its discovery date should be regarded as the deposition date (February 10, 2011) of [Geraldi, the representative of Appellee] who testified that the contested coverage was never requested. . . . Here, however, Appellant acknowledges that it never asserted this argument before the trial court.[ ] Thus, that issue has not been preserved for this Court's review, and must be regarded as waived.

*CCI Commc'ns, Inc.*, 3253 EDA 2011 at 5, 6 (emphasis added). "[Appellant] next argues that its alleged claim against [Appellee] should have been regarded as timely filed because the applicable statute of limitations did not commence to run until [Appellant] had settled its original claim against EMPlOYERS." *Id.* at 6. This Court opined: "[Appellant], however, cites no compelling authority to support this somewhat novel position. . . . Thus, we find no basis upon which to grant relief on this claim." *Id.*

> Our standard of review governing summary judgment motions is well settled.
>
> > [O]ur standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary. We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

*Clausi v. Stuck*, 74 A.3d 242, 247-48 (Pa. Super. 2013) (quotation marks and citations omitted).

> > "[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises; **lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations**." The statute of limitations requires aggrieved individuals to bring their claims within a certain time of the injury, so that the passage of time does not damage the defendant's ability to adequately defend against claims made.

*Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997) (emphasis added). "If a party has the means of discovery within his power but neglects to use them, his claim will still be barred." *Burnside v. Abbott Labs.*, 505 A.2d 973, 988 (Pa. Super. 1985).

"The party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence." *Id.* at 167.

In *Fine v. Checcio*, 870 A.2d 850 (Pa. 2005), the Pennsylvania Supreme Court opined that

it is not relevant to the discovery rules application whether or not the prescribed period has expired; the discovery rule applies to toll the statute of limitations in any case where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises.

*Id.* at 859. In ***Wilson v. El-Daief***, 964 A.2d 354 (Pa. 2009), the Pennsylvania Supreme Court held that "[m]ost cases apply a reasonable-diligence requirement, as opposed to an all-vigilance one, ***see, e.g.***, ***Fine***, [ ] 870 A.2d at 858, and reasonable diligence as described in ***Fine*** is the appropriate formulation." ***Id.*** at 363.

Instantly, the trial court opined:

In its Third Amended Complaint, [Appellant] claimed that [EMPLOYERS] failed to fully compensate [it] for the "business interruption" losses resulting from the loss and damage to the video equipment. The issue here is whether the discovery rule may have tolled the statute of limitations for any negligence claim [Appellant] may have against [Appellee] for failing to place the type of coverage that [Appellant] claims it wanted.

\* \* \*

The precise "injury" at issue here is [Appellant's] claim that [Appellee]: . . . negligently failed to secure loss of income coverage for loss of use of the video equipment . . . .

Here, Selinger, [Appellant's] president re-testified on March 4, 2013, that he reviewed the Policy, at the latest, within days of the fire with both [Geraldi, Appellee's president] and [Hagan, EMPLOYER'S adjustor].

\* \* \*

It is **undisputed** that the policy, issued in July 2007, did not contain business income coverage . . . nor had any

of the previous policies purchased from [Appellee]. [Appellant] did not, despite three amended complaints, ever allege a claim against [Appellee]. Instead, [Appellant] indicated that [its] position was that the loss should have been covered under the auto policy.

\*    \*    \*

. . . Here, in fact, [Appellant's] president reviewed the policy within a week of the fire with representatives of both [EMPLOYERS] and [Appellee], and again six to eight times thereafter in the next three months. The policy has no coverage for business lost income.

. . . **[Appellant] has not explained what, despite reasonable diligence and assistance of the multiple professionals it consulted, should have tolled the statute of limitations, where the policy was clearly reviewed within days of the fire to determine what was covered.**

\*    \*    \*

. . . It['s] clear now, through additional discovery, that [Appellant] was not affirmatively mislead . . . .

. . . [Selinger, Appellant's] president acknowledges that the Policy was reviewed in detail with him six to eight times at least three months after the fire, and does not testify that he was assured his damaged [sic] would be covered under the auto portion of the policy.

\*    \*    \*

There was extensive discussion about the issues of coverage, and nowhere is it averred or established that [Appellee] lied to or mislead [Appellant] to an extent where the statute of limitations could have been tolled beyond the end of 2007.

Trial Ct. Op. at 5, 6, 7, 8-9, 10, 11 (footnotes omitted and some emphasis added). We agree.

We discern no abuse of discretion or error of law by the trial court. *See Clausi,* 74 A.3d at 247-48. Appellant's lack of knowledge, mistake, or misunderstanding will not toll the statute of limitations. *See Dalrymple*, 701 A.2d at 167. Appellant has not satisfied his burden to establish the inability to learn of the injury despite exercising reasonable diligence. *See Brown*, 701 A.2d at 167. Accordingly, we agree with the trial court that Appellant's claim is barred by the statute of limitations. *See Burnside*, 505 A.2d at 988.

Appellant's brief is devoid of any citation to legal authority for issues B, C and D. The "failure to develop an argument with citation to, and analysis of, relevant legal authority waives that issue on review." *Harris v. Toys "R" Us-Penn, Inc.*, 880 A. 2d 1270, 1279 (Pa. Super. 2005). Therefore, issues B, C and D are waived.[9] *See id.*

Accordingly, we affirm the order granting summary judgment in favor of Appellee.

Order affirmed.

---

[9] We note Appellant's reply brief contains no citation to legal authority.

J. A13039/14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/22/2014</u>