J-A29032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LANETTE MITCHELL, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| EVAN SHIKORA, D.O., UNIVERSITY OF | : | |
| PITTSBURGH PHYSICIANS d/b/a | : | |
| WOMANCARE ASSOCIATES, MAGEE | : | |
| WOMEN'S HOSPITAL OF UPMC | : | No. 384 WDA 2016 |

Appeal from the Judgment entered February 22, 2016
in the Court of Common Pleas of Allegheny County,
Civil Division, No(s): GD 13-023436

BEFORE:  DUBOW, MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED MARCH 29, 2017**

Lanette Mitchell ("Mitchell") appeals from the Judgment entered in favor of Evan Shikora, D.O. ("Dr. Shikora"), University of Pittsburgh Physicians d/b/a Womancare Associates, Magee Women's Hospital of UPMC ("Magee") (collectively "Defendants").  We reverse and remand for a new trial.

On May 16, 2012, Dr. Shikora, an obstetrical and gynecological surgeon, and Karyn Hansen, M.D. ("Dr. Hansen"), performed a hysterectomy on Mitchell at Magee.  After Mitchell was administered general anesthesia, Dr. Shikora, using an open laparoscopic technique, made an incision in Mitchell's abdomen.  While opening the sheath of the peritoneum, Dr. Shikora smelled fecal matter and suspected he had severed Mitchell's bowel. Dr. Shikora abandoned the hysterectomy and consulted a general surgeon,

Dr. Anita Courcoulas ("Dr. Courcoulas"). Dr. Courcoulas repaired the bowel, which had been severed nearly in half, by performing a diverting loop ileostomy. Following the surgery, Mitchell was required to wear a colostomy bag for a short time.

On December 16, 2013, Mitchell filed a medical negligence action against Defendants. Subsequently, the parties filed numerous pleadings. On January 25, 2016, Mitchell filed a Motion *in Limine*, seeking to exclude consent and risk/complications evidence at trial. The trial court granted Mitchell's Motion as to the lack of consent, as she had not raised such a claim in her action. However, as to the whether a bowel injury was a known risk or complication of the surgery, the trial court denied Mitchell's Motion and allowed such evidence to be presented at trial.

The case proceeded to a jury trial. On February 5, 2016, the jury returned a verdict in favor of Defendants. Mitchell filed a Motion for Post-Trial Relief, seeking a new trial excluding the risk/complications evidence. The trial court denied the Motion. Thereafter, the trial court entered Judgment in favor of Defendants. Mitchell filed a timely Notice of Appeal and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Mitchell raises the following question for our review:

Whether the trial court erred by allowing [D]efendants to admit evidence of the "known risks and complications" of a surgical procedure[,] in a medical malpractice case that did not involve informed consent-related claims, and such evidence was,

- 2 -

therefore, irrelevant, unfairly prejudicial, and misled jurors on an issue that directly controlled the outcome of the case, thereby warranting a new trial?

Brief for Appellant at 4.

"[W]hen reviewing the denial of a motion for new trial, we must determine if the trial court committed an abuse of discretion or error of law that controlled the outcome of the case." *Fletcher–Harlee Corp. v. Szymanski*, 936 A.2d 87, 93 (Pa. Super. 2007) (citation omitted). Further, "[w]hen we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law." *Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014) (citation omitted). "In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party." *Id*. (citation omitted).

Mitchell contends that "in a medical negligence action where there are no claims for informed consent, evidence related to the risks and complications of surgery as communicated to the patient is generally excluded as irrelevant." Brief for Appellant at 20. Mitchell argues that such evidence is inadmissible because there is no assumption of risk defense in a medical negligence action, and the evidence is irrelevant as to the question of negligence. *Id*. at 21, 24; *see also id*. at 22-23 (wherein Mitchell points out that evidence of risks and complications is relevant in an informed

consent action, not a medical negligence action); *id*. at 28-29 (noting that Mitchell did not raise a *res ipsa loquitur* claim). Mitchell claims that the admission of risks and complications evidence improperly allowed the jury to consider her consent to undergo the surgery to be the same as her consent to the risks and complications. *Id*. at 24-25.

Mitchell further asserts that she did not allege a negligence claim based on an alleged breach of the standard of care for failure to inform her of the risks of the surgery. *Id*. at 22-23, 26-27. Mitchell argues that in her negligence action, she claimed that Dr. Shikora breached his duty of care by failing to identify her bowel prior to cutting it, and that evidence that a bowel injury was a known risk or complication of the surgery was not relevant to whether Dr. Shikora met the standard of care. *Id*. at 26-27. Mitchell cites the testimony of Defendants' expert that the bowel injury played no role in determining whether Dr. Shikora acted negligently, and thus asserts that the risks and complications evidence did not aid the jury in determining whether Defendants acted negligently. *Id*. at 27-28; *see also id*. at 29. Mitchell contends that because the admission of the risks and complications evidence was unfairly prejudicial and controlled the outcome of the case, a new trial is required. *Id*. at 29-31.

> Evidence is relevant if it has "any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Pa.R.E. 401. Irrelevant evidence is inadmissible, and relevant evidence "is admissible except as otherwise provided by law." Pa.R.E. 402. The "except as otherwise provided by law" qualifier includes the principle that relevant

evidence may be excluded "if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

**Brady v. Urbas**, 111 A.3d 1155, 1161 (Pa. 2015).

Where, as here, the plaintiff has only raised a medical negligence claim, our Supreme Court set forth the relevant law with regard to the admission of known risks and complications evidence as follows:

> To prevail on a claim of medical negligence, the plaintiff must prove that the defendant's treatment fell below the appropriate standard of care. We therefore consider whether informed-consent evidence is probative of that question. In undertaking this inquiry, it is important to recognize that such information is multifaceted: it reflects the doctor's awareness of possible complications, the fact that the doctor discussed them with the patient, and the patient's decision to go forward with treatment notwithstanding the risks.

> Some of this information may be relevant to the question of negligence if, for example, the standard of care requires that the doctor discuss certain risks with the patient. Evidence about the risks of surgical procedures, in the form of either testimony or a list of such risks as they appear on an informed-consent sheet, may also be relevant in establishing the standard of care. In this regard, we note that the threshold for relevance is low due to the liberal "any tendency" prerequisite. Accordingly, we decline … to hold that all aspects of informed-consent information are always irrelevant in a medical malpractice case.

> Still, the fact that a patient may have agreed to a procedure in light of the known risks does not make it more or less probable that the physician was negligent in either considering the patient an appropriate candidate for the operation or in performing it in the post-consent timeframe. Put differently, there is no assumption-of-the-risk defense available to a defendant physician which would vitiate his duty to provide treatment according to the ordinary standard of care. The patient's actual, affirmative consent, therefore, is irrelevant to the question of

- 5 -

negligence. Moreover, … assent to treatment does not amount to consent to negligence, regardless of the enumerated risks and complications of which the patient was made aware. That being the case, in a trial on a malpractice complaint that only asserts negligence, and not lack of informed consent, evidence that a patient agreed to go forward with the operation in spite of the risks of which she was informed is irrelevant and should be excluded.

*Id*. at 1161–63 (citations, footnotes, emphasis, and some quotation marks omitted).

As noted above, and contrary to some of Mitchell's claims, the trial court excluded all evidence regarding informed consent, including, *inter alia*, conversations between Dr. Shikora and Mitchell about the surgical risks and complications, and evidence of Mitchell's consent to proceed with the surgery despite the risks and complications. However, the trial court allowed the introduction of testimony related to the general risks and complications of a laparoscopic hysterectomy. Thus, we must determine whether **Brady** allows the introduction of such testimony under the facts of this case.[1]

Here, Mitchell's medical expert, Vadim Morozov, M.D. ("Dr. Morozov"), testified about the anatomy of the abdomen, performing a proper and safe

---

[1] Defendants cite to a host of Pennsylvania cases wherein general testimony regarding risks and complications was admitted into evidence. Brief for Appellees at 30-31; **see also id**. at 32-35 (wherein Defendants cite to cases outside this jurisdiction to support their claim that the evidence was admissible). While risks and complications evidence may be relevant in establishing the standard of care, the determination as to the admissibility of such evidence is conducted on a case-by-case basis. **See Brady**, 111 A.3d at 1161.

laparoscopic hysterectomy, and provided his opinion that cutting into the colon without proper identification violated the relevant standard of care. N.T., 2/1/16, at 163-85. With regard to complications, Dr. Morozov stated the following:

[Mitchell]: Doctor, I want to talk to you very briefly about something called a complication[,] if we could?

[Dr. Morozov]: Sure.

[Mitchell]: The failure to identify [] Mitchell's mid descending bowel and cutting into it, is that a complication?

[Dr. Morozov]: So the failure to identify the organ is not a complication, but rather the failure to identify the appropriate anatomy.

[Mitchell]: So, is that a breach of the standard of care doctor?

[Dr. Morozov]: In my opinion, yes.

…

[Defendants]: Tell me if you agree with this, doctor. The majority of complications in laparoscopic surgery occur during the entry of the instruments into the abdomen used to create pneumoperitoneum?

[Dr. Morozov]: That's probably [a] correct statement.

[Defendants]: The majority of complications occur at that point in the procedure?

[Dr. Morozov]: Yes. Again, yes.

*Id*. at 203, 228. Dr. Morozov then stated that numerous complications may arise out of a laparoscopic hysterectomy and that complications may occur in the absence of negligence. *Id*. at 231-32.

Defendants' expert, Charles Ascher-Walsh, M.D. ("Dr. Ascher-Walsh"), testified that Dr. Shikora and Dr. Hansen met the standard of care in performing the hysterectomy. N.T., 2/5/16, at 694, 701-02; ***see also id***. at 721 (wherein Dr. Ascher-Walsh testified that the injury suffered by Mitchell was "unavoidable"). With regard to complications, Dr. Ascher-Walsh stated the following:

> [Mitchell]: You talk a lot about complications in your report, Doctor. So I want to talk about surgical complications with you, if I might for just a little bit. Would that be okay?
>
> [Dr. Ascher-Walsh]: Of course.
>
> …
>
> [Mitchell]: Okay. Now, your opinion in this case is that [] Mitchell's colon injury was a complication of surgery; am I right?
>
> [Dr. Ascher-Walsh]: Correct.
>
> [Mitchell] And, I think you said that colon injuries can happen with the surgery in the best of care?
>
> [Dr. Ascher-Walsh]: Correct.
>
> [Mitchell] And in injuries to either the large or small bowel, correct?
>
> [Dr. Ascher-Walsh]: Correct.
>
> [Mitchell]: Because there's always something behind there?
>
> [Dr. Ascher-Walsh]: Correct.
>
> [Mitchell]: Despite the best of care, right?
>
> [Dr. Ascher-Walsh]: Yes.

[Mitchell]: You would also agree merely because a patient suffers a colon injury, that doesn't really tell us whether the doctor was negligent, does it?

[Dr. Ascher-Walsh]: That's correct.

[Mitchell]: It also doesn't tell you whether he wasn't negligent, does it? (No verbal response.)

[Mitchell]: For example, if Dr. Hansen and Dr. Shikora had performed this surgery blindfolded, you would agree that the surgeons could have cut [] Mitchell's bowel. Correct?

[Dr. Ascher-Walsh]: Sure.

[Mitchell]: We can both agree that had they performed this surgery blindfolded, certainly they would have been negligent?

[Dr. Ascher-Walsh]: Sure.

[Mitchell]: Both situations, whether the best of care or most dangerous care was used, both of those situations would result in the bowel injury, correct?

[Dr. Ascher-Walsh]: Correct.

[Mitchell]: So, in fact, the injury, the bowel injury itself, doesn't really tell us [] much about the standard of care, does it?

[Dr. Ascher-Walsh]: That's correct.

*Id*. at 704, 706-07; *see also* N.T., 1/19/16, at 41 (wherein Dr. Courcoulas, the surgeon that repaired Mitchell's bowel, stated that a bowel injury is a complication of laparoscopic surgeries).

Here, while evidence of risks and complications of a surgical procedure may be admissible to establish the relevant standard of care, *see Brady*, 111 A.3d at 1161-62, in this case, such evidence was irrelevant in determining whether Defendants, specifically Dr. Shikora, acted within the

applicable standard of care. Acknowledging a liberal threshold to determine the relevancy of such evidence, we nevertheless emphasize that the evidence must be probative of whether Defendants' treatment of Mitchell fell below the standard of care. *See id*. at 1162. The fact that one of the risks and complications of the laparoscopic hysterectomy, *i.e.*, the perforation of the bowel, was the injury suffered by Mitchell does not make it more or less probable that Dr. Shikora conformed to the proper standard of care for a laparoscopic hysterectomy and was negligent. *See* N.T., 2/5/16, at 707. Indeed, in deciding to undergo this surgery, Mitchell expects that the treatment will be rendered in accordance with the applicable standard of care, regardless of the risks. *See Brady*, 111 A.3d at 1162.

Moreover, the evidence would tend to mislead and/or confuse the jury by leading it to believe that Mitchell's injuries were simply the result of the risks and complications of the surgery. *See Brady*, 111 A.3d at 1163 (noting that evidence of risks and complications could confuse the jury and cause it to "lose sight of the central question pertaining to whether defendant's actions conformed to the governing standard of care."). In point of fact, this evidence was central to Defendants' defense, as demonstrated by their opening and closing statements. *See, e.g.,* N.T., 2/5/16, at 737 (stating during Defendants' closing argument that "complications are a part of medicine and a part of life. … [C]omplications can occur despite the best possible care."); *id*. at 745 (noting that Dr. Ascher-Walsh told you

complications are often unavoidable in surgery. Dr. Shikora should be judged by his management of the complication, which was excellent, and Dr. Ascher-Walsh … said complications can – it can happen. … Unfortunately, the complication can happen. It is not negligence."); N.T., 2/1/16, at 120 (stating during Defendants' opening statement that "no one will dispute she had a medical complication that was both unfortunate and unexpected, but – it is a big but – that complication was not the result of medical negligence, the care was not unreasonable."); *id*. at 114 (noting that "[t]he complication we intend to show was both unpredictable and unfortunately unavoidable."); *id*. at 115 (stating that "[y]ou all know either from your own experience or from your common sense that complications can occur in medicine. Indeed, complications or setbacks or problems or adversity [is] not the only part of medicine…."). Thus, the risks and complications evidence was immaterial to the issue of whether Defendants' treatment of Mitchell met the standard of care.[2] Accordingly, we hold that the evidence was inadmissible, and that the failure to grant Mitchell's Post-Trial Motion on this issue was error by the trial

_____

[2] Defendants argue that the admission of the risks and complication evidence was relevant to the standard of care, aided the jury in understanding the procedure at issue, and prevented the jury from inferring causation from the occurrence of the injury, rather than the conduct of Defendants. Brief for Appellees at 28-32, 36-37. While a jury may not infer causation merely from the occurrence of an injury, a jury also may not conclude that the risks and complications of a particular surgery demonstrated the absence of any negligence. Thus, the risks and complications evidence in no way established that Defendants were not negligent or that Mitchell proved the negligence.

court.[3]  Based upon the foregoing, we reverse the Judgment entered in favor of Defendants, and conclude that a new trial without the admission of risks and complications evidence is required.

Judgment reversed.  Case remanded for a new trial.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/29/2017

---

[3] Based upon our resolution, we need not consider Mitchell's *res ipsa loquitur* claim.