J. A19042/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KENNETH LICHTENBERGER, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| GEISINGER COMMUNITY MEDICAL | : | |
| CENTER, GEISINGER HEALTH SYSTEM | : | |
| FOUNDATION, DEEPAK SINGH, M.D., | : | No. 142 MDA 2018 |
| KAELY AIKMAN, PA-C AND | : | |
| TODD ELLISON, PA-C | : | |

Appeal from the Judgment Entered February 15, 2018,
in the Court of Common Pleas of Lackawanna County
Civil Division at No. 16-CV-3362

BEFORE:  GANTMAN, P.J., NICHOLS, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED: MARCH 27, 2019**

Kenneth Lichtenberger appeals from the February 15, 2018 judgment entered in favor of Geisinger Community Medical Center ("GCMC"), Geisinger Health System Foundation ("Health System"), Deppak Singh, M.D. ("Dr. Singh"), Kaeley Aikman, PA-C ("Aikman"), and Todd Ellison, PA-C ("Ellison") (collectively, "appellees") and against appellant.  We affirm.

The trial court set forth the following:

> [Appellant] underwent Coronary Artery Bypass Graft (CABG) surgery on September 11, 2014.  Part of the surgical procedure involved the harvesting of the greater saphenous vein in his left leg so that it could be used to facilitate bypassing the blockages discovered in his coronary artery.  While the bypass portion of the procedure was accomplished without

any complications, [appellant] filed suit alleging injuries caused as a result of the harvesting of his left greater saphenous vein. [Appellant] sued his cardiac surgeon, Deepak Singh, M.D., the two physician's assistants who performed the saphenous vein harvest, Kaely Aikman, PA-C and Todd Ellison, PA-C, and [GCMC], where his surgery was performed.[Footnote 1] [Appellant's] Second Amended Complaint contained claims of negligence against the individual [appellees], vicarious liability against [GCMC] and corporate negligence against GCMC.[Footnote 2]

> [Footnote 1] [Appellant] also named [Health System] as a defendant, but stipulated to the withdrawal of his claims against that entity prior to trial.

> [Footnote 2] We granted summary judgment in favor of GCMC on the corporate negligence claim on July 6, 2017.

The case proceeded to a jury trial on July 10, 2017. On July 14, 2017, a jury returned a verdict finding no negligence on the part of any of [appellees].

[Appellant] thereafter filed a Motion for New Trial pursuant to Pa.R.Civ.P. 227.1(a)(1) on July 24, 2017. [Appellees] responded on August 10, 2017. Oral argument was scheduled and held on October 17, 2017.

Trial court opinion, 12/15/17 at 1-2.

The record reflects that the trial court denied appellant's motion for a new trial on December 15, 2017. On January 16, 2018, appellant filed a notice of appeal. On January 17, 2018, the trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied. The trial court then filed with this

court a copy of its December 15, 2017 opinion which disposed of the issues raised in appellant's Rule 1925(b) statement.

The record further reflects that on February 12, 2018, this court entered an order directing appellant to praecipe the trial court prothonotary to enter judgment and file with the prothonotary of this court, within 10 days, a certified copy of the trial court docket reflecting the entry of judgment in order to comply with Pa.R.A.P. 301, which sets forth the requirements for a final appealable order. (Order of court, 2/12/18.) This court further ordered that when appellant complied with Rule 301, this court would treat appellant's previously filed notice of appeal as filed after the entry of judgment. Appellant timely complied. The record reflects that judgment was entered in favor of appellees on February 15, 2018. By order entered February 26, 2018, this court discharged its February 12, 2018 order.

Appellant raises the following issues for our review:

> [1.] Whether the trial court committed error by refusing to permit [appellant's] Expert Bruce P. Mindich, M.D. to testify as to the applicable standard of care for harvesting a saphenous vein[?]
>
> [2.] Whether the trial court erred in refusing to permit [appellant] to offer testimony and evidence of the statement by Russell Stahl, M.D. regarding the diagnosis of [appellant's] leg pain after it was reported to Dr. Stahl[?]
>
> [3.] Whether the trial court erred in permitting [appellees] to present testimony and evidence on the known risks and complications associated

with the harvesting of the saphenous vein in Coronary Artery Bypass Graft Surgery[?]

[4.] Whether the trial court erred in permitting [appellees] to present testimony and evidence on the September 3, 2015 report of Bruce P. Mindich, M.D. that was sent to [appellees] for settlement purposes prior to the commencement of [appellant's] lawsuit[?]

Appellant's brief at 3.

"[W]hen reviewing the denial of a motion for new trial, we must determine if the trial court committed an abuse of discretion or error of law that controlled the outcome of the case." *Estate of Hicks v. Dana Companies, LLC*, 984 A.2d 943, 951 (Pa.Super. 2009) (*en banc*), *appeal denied*, 19 A.3d 1051 (Pa. 2011) (citations omitted).

The issues raised by appellant challenge various evidentiary rulings made by the trial court.

Admission of evidence is within the sound discretion of the trial court and we review the trial court's determinations regarding the admissibility of evidence for an abuse of discretion. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Id.* at 961 (citations omitted). "Additionally, [e]videntiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment." *Id.* (internal quotation marks and citations omitted; brackets in original).

Appellant first complains that the trial court erred when it refused to permit appellant's medical liability expert, Bruce P. Mindich, M.D., to testify as to the applicable standard of care for harvesting a saphenous vein.

> The admission of expert testimony is within the trial court's sound discretion and we will not disturb that decision without a showing of manifest abuse of discretion. An expert's testimony on direct examination is to be limited to the fair scope of the expert's pre-trial report. In applying the fair scope rule, we focus on the word "fair." Departure from the expert's report becomes a concern if the trial testimony "would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the response." Therefore, the opposing party must be prejudiced as a result of the testimony going beyond the fair scope of the expert's report before admission of the testimony is considered reversible error. We will not find error in the admission of testimony that the opposing party had notice of or was not prejudiced by.

**Whitaker v. Frankford Hosp. of City of Philadelphia**, 984 A.2d 512, 522 (Pa.Super. 2009) (citation omitted).

The record reflects that during discovery, appellant submitted the May 24, 2016 expert report of Dr. Mindich[1] wherein Dr. Mindich opined, in relevant part:

> The anatomy of the saphenous nerve and saphenous vein in the area of venous excision in connection with

---

[1] The record reflects that Dr. Mindich authored a substantially similar expert report, which is dated September 3, 2015, prior to appellant's instituting the underlying action. The record further reflects that Dr. Mindich submitted a supplemental report dated May 9, 2017, stating that he had reviewed the reports of appellees' experts and that those reports did not alter his original opinion. (Supplemental report of Bruce P. Mindich, M.D., 5/9/17.)

[appellant's] coronary by-pass surgery is well known. Under the accepted relevant standard of care the injuries to [appellant] resulting from the underlying injury to the saphenous nerve occurring at the time of his coronary by-pass surgery--whether it was inadvertently cut, tied-off or otherwise grossly impacted as a result of his surgery--were readily avoidable.

Based upon the foregoing, it is my professional opinion to a reasonable degree of medical certainty that the care, skill or knowledge exercised or exhibited in the surgery, treatment, practice of medicine or work performed in connection with [appellant's] coronary by-pass surgery by Dr. Deepak Singh, M.D., K. Aikman, PA-C, and T. Ellison, PA-C at [GCMC], Scranton PA on September 11, 2014 fell outside acceptable professional standards and that such conduct was the cause bringing about the harm suffered by [appellant].

Report of Bruce P. Mindich, M.D., 5/24/16 at 1-2.

In precluding Dr. Mindich from testifying as to the acceptable professional standards, the trial court explained:

. . . Dr. Mindich's reports opined that the actions of [appellees] "fell outside acceptable professional standards" and that "such conduct was the cause bringing about the harm suffered by [appellant]." However, Dr. Mindich never identified in any of his reports what those "acceptable professional standards" consisted of. Dr. Mindich never identified what medical records he reviewed before drafting his report. His report simply stated, "pursuant to your request, I have reviewed certain medical records relating to the cardiothoracic surgery performed on [appellant]. . . . The records reviewed were all of those which were included with your letter." ***See***, May 24, 2016 report of Bruce P. Mindich, M.D. to Attorney Carl J. Greco. Moreover, nowhere in his report does Dr. Mindich identify what the "acceptable professional standards" were against which he was

measuring the conduct of [appellees]. Dr. Mindich just simply and generally states that it is his professional opinion "to a reasonable degree of medical certainty that the care, skill **or** knowledge exercised **or** exhibited in the surgery, treatment, practice of medicine **or** work performed in connection with [appellant's] coronary by-pass surgery by [appellees] . . . fell outside acceptable professional standards." (emphasis added). Dr. Mindich's report, essentially, is a disjunctive kitchen sink approach that measures the conduct of [appellees] without revealing or identifying his yardstick. To allow Dr. Mindich to identify the acceptable standard of care for the first time from the witness stand deprived [appellees] of an appropriate opportunity to prepare a response to his testimony. In short, we conclude that since Dr. Mindich did not identify the acceptable standards of care in his report, testimony beyond his report would not have been, in our view, within the "fair scope" of his report. Indeed, Dr. Mindich's report was completely silent regarding any standard of care, or even breach for that matter, concerning [appellee Dr.] Singh's supervisory capacity over the physician's assistants Aikman and Ellison. His report provided absolutely no basis for any proposed testimony on that topic. We do not think it consistent with Rule 4003.5[2] to allow an expert to define the standard of care from the witness stand without first identifying it in a report.

Trial court opinion, 12/15/17 at 8-9.

A reading of Dr. Mindich's May 24, 2016 expert report demonstrates that he failed to set forth the applicable standard of care; rather, Dr. Mindich merely opined that certain conduct "fell outside acceptable professional standards" without identifying those "acceptable professional standards." (Report of Bruce P. Mindich, 5/24/16 at 2.) Therefore, the trial court properly

---

[2] Pa.R.Civ.P. 4003.5(c) sets forth the fair scope rule.

precluded Dr. Mindich from testifying at trial as to the applicable standard of care.

Appellant next complains that the trial court erred by precluding appellant and his neighbor from testifying regarding the alleged statement made to them by Russell Stahl, M.D., a non-party physician, that Dr. Stahl's colleague had nicked appellant's nerve because the statement was admissible under Pennsylvania Rules of Evidence 803(4) and (25).

Rule 803 provides, in relevant part:

> The following are not excluded by the rule against hearsay,[3] regardless of whether the declarant is available as a witness:
>
> . . . .
>
> (4)  Statement Made for Medical Diagnosis or Treatment.  A statement that:
>
>   (A)  is made for--and is reasonably pertinent to-- medical treatment or diagnosis in contemplation of treatment; and
>
>   (B)  describes medical history, past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as

---

[3] Pennsylvania Rule of Evidence 801(c) defines "hearsay" as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.  Pa.R.E. 801(c).  "Hearsay is not admissible except 'as provided by the [[R]ules of Evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute."  Pa.R.E. 802.

> reasonably pertinent to treatment, or diagnosis in contemplation of treatment.
>
> . . . .
>
> (25) An Opposing Party's Statement. The statement is offered against an opposing party and:
>
> . . . .
>
> > (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
>
> . . . .

Pa.R.E. 803(4) & (25)(D).

With respect to the medical treatment exception to the hearsay rule set forth in Rule 803(4), our supreme court has explained that this exception:

> provides that testimony repeating out-of-court statements which were made for the purposes of receiving medical treatment are admissible as substantive evidence. As early as 1884, this Court stated that "nothing is better settled than that statements of a patient to his physician, as to the character and seat of his sensations, made for the purpose of receiving medical advice, are competent evidence. . . ." *Lichtenwallner v. Laubach*, 105 Pa. 366 (1884).
>
> > The law in Pennsylvania . . . has been that statements to a doctor were admissible insofar as they were necessary and proper for diagnosis and treatment of the injury and referred to symptoms, feelings and conditions.

> .... Given these descriptions of the medical treatment exception, it becomes apparent that there are essentially two requirements for a statement to come within this exception. First, the declarant must make the statement for the purpose of receiving medical treatment, **_Lichtenwallner v. Laubach_**, and second, the statement must be necessary and proper for diagnosis and treatment[.]

**_Commonwealth v. Smith_**, 681 A.2d 1288, 1291 (Pa. 1996) (some internal citations omitted).

Here, the trial court properly concluded that the medical treatment exception to the hearsay rule does not apply because the statement that Dr. Stahl allegedly made to appellant and his neighbor was not made by a patient for the purpose of receiving medical treatment.

With respect to the admission by a party opponent exception under Rule 803(25)(D), the proponent of the statement must demonstrate that: "(1) the declarant was an agent or employee of a party opponent; (2) the declarant made the statement while employed by the party opponent; and (3) the statement concerned a matter within the scope of agency or employment." **_Harris v. Toys "R" Us-Penn, Inc._**, 880 A.2d 1270, 1275 (Pa.Super. 2005) (citation omitted).

Here, appellant claims that the trial court erred in not admitting Dr. Stahl's statement that Dr. Stahl's colleague had nicked appellant's nerve under Rule 803(25)(D) because:

> The trial record clearly supports the existence of an **ostensible agency** relationship between Dr. Stahl

and [GCMC]. In fact, in response to questioning, Dr. Singh stated:

> Q. Who's Dr. Stahl?
>
> A. Dr. Stahl at that time was one of my colleagues and partners. And he was primarily in charge of this campus or the Scranton campus.

Dr. Singh went on to testify that, "At [GCMC], Dr. Stahl is in charge" with respect to determining individuals' roles in surgery. Further, the statement is clearly within the scope of this relationship: it directly relates to the reason that [appellant] was admitted to [GCMC]; the cardiothoracic evaluation he underwent with Dr. Stahl when admitted to the hospital; and the surgery that [appellant] underwent and that is at the center of this action. Finally, the statement was made during the existence of that relationship. The requirements of Pa. R.E. 803(25)(D) where [sic] clearly met, however, the court committed an abuse of discretion and failed to apply this exception to the hearsay rule when ruling on Plaintiff's Motion for a New Trial.

Appellant's brief at 29 (emphasis added).

Contrary to appellant's assertion, ostensible agency is a theory of liability and not a consideration under the admission by party opponent exception to the hearsay rule.

To gain admissibility under Rule 803(25)(D), appellant was first required to prove by a preponderance of the evidence that Dr. Stahl made the statement while an agent of GCMC. An agency relationship may be created by:

> (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by

estoppel. Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters. Implied authority exists in situations where the agent's actions are "proper, usual and necessary" to carry out express agency. Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. Authority by estoppel occurs when the principal fails to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal.

\* \* \*

The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking. The creation of an agency relationship requires no special formalities. The existence of an agency relationship is a question of fact. The party asserting the existence of an agency relationship bears the burden of proving it by a fair preponderance of the evidence. In establishing agency, one need not furnish direct proof of specific authority, provided it can be inferred from the facts that at least an implied intention to create the relationship of principal and agent existed.

***CONRAIL v. Ace Prop. & Cas. Ins. Co.***, 182 A.2d 1011, 1027 (Pa.Super. 2018).

Here, appellant neither claims on appeal nor did he demonstrate below the existence of an agency relationship between GCMC and Dr. Stahl by express authority, implied authority, apparent authority, and/or authority by estoppel. Appellant merely cites to Dr. Singh's testimony that he and Dr. Stahl were "colleagues and partners" and that Dr. Stahl "was primarily in

charge of this campus or the Scranton campus" to support the existence of an "ostensible agency" relationship between Dr. Stahl and GCMC. (Appellant's brief at 29.) Notwithstanding the fact that the ostensible agency theory of liability has no bearing on admissibility of the statement under Rule 803(25)(D), the record supports the trial court's determination that appellant failed to lay a foundation to support the conclusion that Dr. Stahl was GCMC's agent. Therefore, the trial court did not abuse its discretion when it held that the statement was not admissible under Rule 803(25)(D).

Appellant next complains that the trial court erred when it permitted appellees to introduce evidence of known risks and complications of harvesting the saphenous vein in coronary artery bypass surgery. In this assignment of error, appellant calls this court's attention to four pages of testimony of defense expert Dr. Walter Pae, Jr., wherein appellant claims Dr. Pae impermissibly and "continually testified before the jury that [appellant's] injuries were a known risk and complication associated with the harvesting of the saphenous vein." (Appellant's brief at 37-39, citing notes of testimony, 7/12/17 at 181-182, 184-185.)

Our review of Dr. Pae's testimony reveals that appellant failed to object to any of the testimony that he now challenges as inadmissible.[4] It is well settled that a failure to object before the trial court results in waiver of the

---

[4] We note that a review of Dr. Pae's testimony on direct and re-direct examinations reveals that appellant did not object to any of Dr. Pae's testimony. (Notes of testimony, 7/12/17 at 173-189, 195-197.)

issue on appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"); *see also* ***Burnhauser v. Bumberger***, 745 A.2d 1256, 1259 (Pa.Super. 2000) (failure to object before the trial court results in waiver of issue on appeal).

Appellant nevertheless claims that he preserved his objection to Dr. Pae's challenged testimony because

> [p]rior to the direct testimony of Dr. Mindich, the [trial] court ruled on the extent of the testimony that Dr. Mindich would be allowed to provide on the applicable standard of care. In light of the ruling on the scope of Dr. Mindich's testimony, over the objection and argument of [appellant's] counsel, the court erred again in ruling that such testimony would "open the door" to testimony regarding the known risks and complications associated with the harvesting of a saphenous vein in CABG Surgery.

Appellant's reply brief at 10.

Even if we gave appellant the benefit of the doubt that the argument he advanced at trial regarding the fair scope of Dr. Mindich's report that preceded the trial court's ruling with respect to the scope of Dr. Mindich's testimony somehow preserved his objection to Dr. Pae's testimony, his claim would fail.

In ***Mitchell v. Shikora***, 161 A.3d 970, 975 (Pa.Super. 2017), we held that evidence of risks and complications of a surgical procedure may be admissible to establish the relevant standard of care, but such evidence is irrelevant to the determination of whether the defendant acted within the applicable standard of care in medical negligence cases that do not advance an informed consent claim.

Here, with respect to evidence of risks and complications, the trial court ruled as follows:

> [THE COURT:] [B]ased on my reading of Mitchell, I'm going to say at this stage of the game we won't be taking any evidence on the discussion of risks or complications, okay, based on my reading of Mitchell. Mitchell does not provide an out and out ban of evidence of risk and complications in the absence of an informed consent claim.
>
> But based on the circumstances that we have right now, I think it's sufficient to preclude that evidence. I will say that if evidence is brought forth either by way of direct or cross examination which might open that door, I will consider using it or allowing it in at the appropriate time. But as we stand right now[] it's not coming in [. . . .]

Notes of testimony, 7/10/17 at 24-25.

During direct examination, and despite the trial court's proper ruling precluding Dr. Mindich from testifying as to the applicable standard of care as outside the fair scope of his expert report, Dr. Mindich testified that "the standard of care demands that you do not cause damage to the nerve that runs near the saphenous vein." (*Id.* at 69.) At this point, evidence of risks and complications became admissible to establish the applicable standard of care.

Appellant finally complains that the trial court erred in permitting Dr. Mindich to be cross-examined with respect to the doctor's September 3, 2015 expert report that was sent as an enclosure to correspondence that appellant's counsel sent to Dr. Singh, GCMC, and Health System that placed

them on notice of appellant's claims and attempted to settle the case in violation of Pa.R.E. 408. (Appellant's brief at 40-43; *see also* correspondence dated 9/11/15 from appellant's counsel to Dr. Singh, GCMC, and Health System stamped "for settlement purposes only".)

Rule 408(a) provides that:

> Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the claim.

Pa.R.E. 408(a).

Stated differently, offers of settlement or compromise of a disputed claim are not admissible in evidence to prove liability for or invalidity of the claim or its amount. *See* Pa.R.E. 408; *see also McMullen v. Kutz*, 925 A.2d 832, 835 (Pa.Super. 2007).

Here, Dr. Mindich's September 3, 2015 expert report sets forth his conclusion that in his:

> professional opinion to a reasonable degree of medical certainty that the care, skill or knowledge exercised or exhibited in the surgery, treatment, practice of medicine or work performed in connection with [appellant's] coronary by-pass surgery by Dr. Deepak Singh, M.D., at [GCMC], Scranton PA on

> September 11, 2014 fell outside acceptable professional standards and that such conduct was the cause bringing about the harm suffered by [appellant].

Report of Bruce P. Mindich, M.D., 9/3/15 at 2.

The record reflects that Dr. Mindich's September 3, 2015 report and his May 24, 2016 expert report are identical but for the addition of Aikman's and Ellison's names in the May 24, 2016 report. The record further reflects that during argument on this issue, counsel for GCMC stated that she received the report from appellant's counsel but that she did not solicit the report. (Notes of testimony, 9/12/17 at 10.) Nothing in the record demonstrates that the jury was informed that the September 3, 2015 report was an enclosure to unsolicited correspondence from appellant's counsel to GCMC, Health System, and Dr. Singh marked "for settlement purposes only."

Therefore, appellant fails to demonstrate how Dr. Mindich's September 3, 2015 report furnished, promised, or offered a valuable consideration in compromising or attempting to compromise the claim during settlement negotiations to render it inadmissible under Rule 408. We find no abuse of discretion.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/27/2019